UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Peter Louis John,

        Petitioner,              Court File No. 18-cv-2079 (WMW/LIB)

v.

                            **REPORT AND RECOMMENDATION**

Kris Rish,

        Respondent.

This matter comes before the undersigned United States Magistrate Judge upon Peter Louis John's ("Petitioner") Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. [Docket No. 1]. The present case has been referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For reasons discussed herein, the Court recommends that the Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED** and that the present action be **DISMISSED with prejudice**, unless, before the deadline for filing objections to this Report and Recommendation, Petitioner files an amended habeas corpus petition listing only fully exhausted claims

**I.     BACKGROUND AND UNDERLYING STATE COURT PROCEEDINGS**

In 2014, Petitioner was convicted in the Ramsey County District Court in the State of Minnesota on one count of second-degree murder and sentenced to a 198-month term. (Ex. 2, [Docket 14-1]). Thereafter, Petitioner filed a direct appeal to the Minnesota State Court of Appeals contending that the state district court erroneously: (1) admitted statements that he made to police before he received a <u>Miranda</u> warning; (2) excluded evidence of four reverse-<u>Spreigl</u> incidents involving an alternative perpetrator; (3) excluded evidence pertaining to a police investigator's disciplinary matter; (4) and that the state district court failed to properly instruct the jury on

accomplice liability. State v. John, No. A15-0303, 2016 WL 1288370, at *2 (Minn. Ct. App. Apr. 4, 2016).

The Minnesota Court of Appeals has related the following details about the events underlying Petitioner's criminal charges, as well as, his trial and convictions:

> During the late evening of March 10, 2014, J.S. died in a St. Paul apartment that was rented to J.B. Mark Healy, Ronald Ballinger, and [Petitioner] Peter John were with J.S. near the time of his death. J.B. was not at the apartment, and another man who had been at the apartment earlier in the evening, M.N., left before J.S. died. J.S.'s autopsy showed that he had multiple blunt-force traumatic injuries on his upper body and head, fractured ribs, and fractured thyroid cartilage; the specific cause of death was a blow near the carotid artery that caused his heart to stop. Some of the men at the apartment were chronic alcoholics, and they were drinking heavily that night. J.S.'s alcohol concentration when he died was 0.376.
>
> According to Healy's trial testimony, while he was sitting in a recliner with headphones on waiting for J.B. to arrive home, an altercation broke out between J.S. and [Petitioner] and a third man whom Healy described as having long black hair and wearing a green military-style jacket. Healy testified that [Petitioner] "punched" J.S., J.S. fell to the floor and seemed unconscious, and [Petitioner] and the other man kicked J.S. repeatedly from the chest up. According to Healy, he pulled his headphones off and asked the other two, "What are you doing that for?" [Petitioner] replied that J.S. was a child molester. Healy then went to sleep. When Healy awoke, [Petitioner] was sleeping next to him on a couch, and J.S. was dead on the floor with a pool of blood around his head. Healy checked for J.S.'s pulse, realized that his body was cold, and called 911. Healy did not recall Ballinger being at the apartment.
>
> M.N. testified that, before he left the apartment, Ballinger arrived with J.S., and, when he left, Healy and [Petitioner] were also there. When M.N. left, the others were all partying and "pretty drunk."
>
> Ballinger testified that, at about 7:00 p.m. or 8:00 p.m., he and J.S. shoplifted some mouthwash containing alcohol. Then they panhandled to get money for beer and walked to J.B.'s apartment. Three or four other people that Ballinger did not know were at the apartment, and they were all drinking alcohol. According to Ballinger, J.S. got into an argument with [Petitioner] after [Petitioner] called J.S. "a child molester" or some other derogatory name, and [Petitioner] began hitting J.S. J.S. ended up on the floor with [Petitioner] hitting and kicking him, and "they were arguing about something, somebody was going to f-k somebody's sister." Ballinger testified that only [Petitioner] kicked J.S. After J.S. became unconscious, [Petitioner] asked Ballinger to help him move J.S.'s body to a dumpster, but Ballinger refused and left. Ballinger admitted that, in the past, he and J.S. had argued about the fact that J.S. had dated Ballinger's girlfriend, but he testified that they "made up" and "became friends again."

> Following Healy's 911 call, eight police officers arrived at the scene, and one officer came later. They had to break into the apartment because the door was locked and Healy could not open it. When the police entered the apartment, Healy stood behind [Petitioner] and pointed at him. Police initially questioned [Petitioner] and Healy in the apartment but then placed them in separate squad cars. During his initial statements to police, [Petitioner] suggested that J.S.'s death had been caused by three black youths who J.S. said had assaulted him before he came to the apartment.
>
> DNA testing established that blood found on the pants worn by [Petitioner], Ballinger, and Healy matched J.S.'s DNA. Also, Ballinger testified that he threw his shoes away on the day after the murder because they were old and wet, and he had been offered a new pair. A forensic expert could not determine whether the shoe impressions on J.S.'s body matched [Petitioner's], Healy's, or M.N.'s shoes due to a lack of detail in the impressions.
>
> [Petitioner] was charged with aiding and abetting second-degree murder, and he was tried in a five-day jury trial. Before trial, the district court granted the state's motion to exclude evidence from a police sergeant's disciplinary record and granted in part [Petitioner]'s motion to admit reverse-*Spreigl* evidence about Ballinger's past bad acts. Following [Petitioner]'s conviction, the district court imposed an executed 198–month prison sentence.

Id. at *1.

Thereafter, Petitioner filed a Petition for Review with the Minnesota Supreme Court on May 2, 2016. (Ex. 4, [Docket No. 14-2], at 146). In his Petition for Review, Petitioner contended that the Minnesota state district court erroneously: (1) admitted statements that he made to police before he received a Miranda warning; (2) excluded evidence of four reverse-*Spreigl* incidents involving an alternative perpetrator; (3) excluded evidence pertaining to a police investigator's disciplinary matter; and (4) that the Minnesota state district court failed to properly instruct the jury on accomplice liability. (Id. at 149–154).

On June 21, 2016, the Minnesota Supreme Court denied Petitioner's request for further review. (Ex. 5, [Docket No. 14-2], at 156).

On February 28, 2017, Petitioner filed a motion for postconviction relief with the Ramsey County District Court in the State of Minnesota. (Ex. 7, [Docket No. 14-2] at 159–161). In his motion for postconviction relief, Petitioner made the following claims: (1) the Minnesota state

district court erred by allowing several witnesses to testify while they were intoxicated; (2) the evidence at trial was insufficient beyond a reasonable doubt to prove every element of the charged offense; (3) the prosecutor's closing argument improperly and prejudicially referred to the prosecutor's opinion of Petitioner's guilt in violation of the due process clause of the Sixth and Fourteenth Amendments; and (4) various claims of ineffective assistance of counsel. (Id.).

On June 22, 2017, the Ramsey County District Court of the State of Minnesota denied Petitioner's motion for post-conviction relief. (Ex. 12, [Docket No. 14-3], at 232–238). The Ramsey County Court concluded:

> In this case, all of Petitioner's claims are clearly claims that were known or should have been known but not raised at the time of direct appeal. Therefore, all of the claims by Petitioner are procedurally barred under the *Knaffla* rule and there is no need for a hearing on the matter.

(Id.).

Thereafter, Petitioner appealed the denial of his motion for post-conviction relief to the Minnesota Court of Appeals. (Ex. 13, [Docket No. 14-3], at 239–262). In his appeal, Petitioner argued that the Minnesota State District Court abused its discretion in denying his motion for post-conviction relief by applying the Knaffla rule, which he maintains is unconstitutional. (Id. at 248).

On February 5, 2018, the Minnesota Court of Appeals upheld the Minnesota District Court's decision barring Petitioner's claims under the Knaffla ruling, stating that "[Petitioner] knew or should have known about all of the claims raised in his postconviction petition at the time of his direct appeal." (Ex. 16, [Docket No. 14-3], at 291–295).

On February 23, 2018, Petitioner appealed to the Minnesota Supreme Court. (Ex. 17, [Docket No. 14-3], at 296–306). On April 25, 2018, the Minnesota Supreme Court denied Petitioner's appeal. (Ex. 18 [Docket No. 14-3).

On July 25, 2018, Petitioner, now a Minnesota state correctional facility inmate, filed with this Court a Petition under 28 U.SC. § 2254 for Writ of Habeas Corpus by a person in state custody challenging the constitutionality of various aspects of his underlying state court proceedings. (See, Petition [Docket No. 1]).

## II.   PETITION FOR WRIT OF HABEAS CORPUS. [Docket No. 1].

Petitioner currently alleges five claims: (1) the Minnesota courts unlawfully and unconstitutionally applied the Knaffla rule to deny his state court postconviction petition; (2) Petitioner's pre-Miranda statements to police were unlawfully admitted at trial; (3) reverse-Spreigl evidence of a potential alternative perpetrator was unlawfully excluded; (4) Petitioner was unlawfully precluded from cross-examining a police officer about a prior act of dishonesty; and (5) the trial court unlawfully failed to instruct the jury that other people were accomplices as a matter of law. (See, Petition [Docket No. 1]).

### A. Standard of Review

"The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) instructs federal courts to engage in a "limited and deferential review of underlying state court decisions." Mark v. Ault, 498 F.3d 775, 782–83 (8th Cir. 2007). Under the AEDPA, relief may not be granted to a petitioner with respect to any claim that was adjudicated on the merits in state court unless the state court's decision:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court; or,

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Federal courts consider a decision "contrary to" precedent when a state court "arrives at a conclusion opposite to that reached by the [Supreme] Court on a question of law" or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 413 (2000). An "unreasonable application" of federal law exists when the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. at 408. Federal courts "may not issue the writ simply because it 'concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Lyons v. Luebbers, 403 F.3d 585, 592 (8th Cir. 2005) (quoting Williams, 529 U.S. at 411). In reviewing state court decisions, a "federal court also presumes that the state court's factual determinations are correct." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000). A petitioner can only rebut this factual presumption by "clear and convincing evidence." Id.; 28 U.S.C. § 2254(e)(1).

Furthermore, a federal court will not entertain a petition for a writ of habeas corpus on behalf of a state prisoner unless the prisoner has first exhausted all available state court remedies. 28 U.S.C. § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Rose v. Lundy, 455 U.S. 509 (1982). This exhaustion of state remedies requirement is based on the principles of comity and federalism; its purpose is to ensure that state courts are given the first opportunity to correct alleged federal law errors raised by state prisoners. O'Sullivan, 526 U.S. at 844; Duncan v. Henry, 513 U.S. 364, 365–66 (1995) (per curiam); Lundy, 455 U.S. at 518–19; Smittie v. Lockhart, 843 F.2d 295, 298 (8th Cir. 1988).

6

To satisfy the exhaustion of state court remedies requirement, a prisoner must fairly present all of his federal law claims to the highest available state court before seeking habeas corpus relief in federal court. O'Sullivan, 526 U.S. at 845; Duncan, 513 U.S. at 365–66; McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997) ("before we may reach the merits of a habeas petition, we must first determine whether the petitioner has fairly presented his federal constitutional claims to the state court"). Thus, in order to satisfy the "fairly presented" requirement, "a petitioner is required to refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue." Barrett v. Acevedo, 169 F.3d 1155, 1161–62 (8th Cir. 1999). Because federal courts will not entertain unexhausted habeas corpus claims, petitions that include such claims are subject to summary dismissal under Rule 4 of the 2254 Rules. A "mixed petition"—i.e., one that includes both exhausted and unexhausted claims—must be dismissed for non-exhaustion. Lundy, 455 U.S. at 510, 522.

Although Petitioner appealed to the Minnesota Supreme Court, based on the record presently before the Court, he did not exhaust either his claim in Ground Three of his Petition that the trial court erred by excluding four instances of reverse-Spreigl evidence nor did he exhaust his claim in Ground Four of his Petition that his rights under the Confrontation Clause were violated.

In Ground Three of his present Habeas Petition, Petitioner challenges the trial court's exclusion of reverse-Spreigl evidence of four prior bad acts by an alternative perpetrator. (Petition, [Docket No. 1], at 4). While Petitioner appears to have referenced some reverse-Spreigl evidence in his Petition for Review to the Minnesota Supreme Court that he contended was unlawfully excluded by the trial court, at no point in his Petition for Review to the Minnesota Supreme Court did he reference a specific federal constitutional right, a particular constitutional provision, a

7

federal constitutional case, or a state case raising a pertinent federal constitutional issue. See, Barrett, 169 F.3d at 1161–62. While Petitioner does cite one Minnesota case, State v. Jones, 678 N.W.2d 1, 16 (Minn. 2004), that discusses federal due process rights, merely referencing a case which references federal due process rights does not satisfy the fair presentation requirement. Chaney v. Minnesota, No. 16-cv-3936 (JNE/SER), 2018 WL 1221167, at *1 (D. Minn. Mar. 8, 2018) ("merely referencing [due process] rights does not satisfy the fair presentation requirement") (citing Thomas v. Wyrick, 622 F.2d 411, 413 (8th Cir. 1980)). Here, Petitioner did not reference any specific violations of federal constitutional rights or rely on any cases to support a proposition that his federal constitutional rights were violated. Rather he merely cited to a state case that happened to include a discussion of a federal right. Accordingly, Petitioner did not satisfy the fair presentation requirement and therefore has not fully exhausted his claim in Ground Three of his present Habeas Petition.

In Ground Four of his present Habeas Petition, Petitioner challenges the trial court's refusal to allow him to cross-examine the lead detective about a prior act of dishonesty in violation of his rights under the Confrontation Clause. (Petition, [Docket No. 1], at 6). In his Petition for Review to the Minnesota Supreme Court, Petitioner did not refer to a confrontation-clause violation, the Sixth Amendment, or a federal or state case addressing the confrontation-clause issue. Accordingly, Petitioner has failed to fully exhaust his claim in Ground Four of his Habeas Petition.

Because it appears on the record now before this Court that Petitioner did not raise these claims to the highest available state court before seeking federal habeas relief, he did not exhaust those claims as required by 28 U.S.C. § 2254(b). Furthermore, because Petitioner did raise Ground One, Two, and Five of his present Habeas Petition in his lower state court Petition for Review to

the Minnesota Supreme Court, his present Habeas Petition contains both exhausted and unexhausted claims.

Because his Petition is a "mixed" petition involving both exhausted and unexhausted claims, and there is a remedy available under state law through which Petitioner could now attempt to exhaust those claims, his Petition is subject to dismissal without prejudice. See, Lundy, 455 U.S. at 522. Petitioner may return to federal court (if necessary) after the state courts, including the Minnesota Supreme Court, have reviewed and decided all of the claims that he seeks to present in federal court. See, Ashker v. Leapley, 5 F.3d 1178, 1180 (8th Cir. 1993) (finding that relief was still available to a state prisoner where he may file another petition for post-conviction relief in state court if he can show reasonable cause for omitting or inadequately raising various grounds in his original post-conviction petition).

Furthermore, a state prisoner who files a mixed petition comprised of exhausted and unexhausted claims can elect to abandon his unexhausted claims and proceed with an amended petition that includes only his fully exhausted claims. Jackson v. Domire, 180 F.3d 919, 920 (8th Cir. 1999) (per curiam); Victor v. Hopkins, 90 F.3d 276, 282 (8th Cir. 1996). If Petitioner intends to exercise that option here, he must file an entirely new amended petition that includes only fully exhausted claims, and he must do so before the deadline for filing objections to this Report and Recommendation. If Petitioner does not file an amended petition before that deadline, he should be deemed to have waived the option to amend, and this action should be summarily dismissed without prejudice.

### B. Certificate of Appealability

A Section 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless he is granted a Certificate of Appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App.

P. 22(b)(1). A COA cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. Daniel, 529 U.S. 473, 484 (2000).

In this case, the Court finds that it is highly unlikely that any other court, including the Eighth Circuit Court of Appeals, could decide Petitioner's claims any differently than they have been decided here. Petitioner has not identified, and the Court cannot independently discern, anything novel, noteworthy, or worrisome about this case that warrants further appellate review. It is therefore recommended that Petitioner not be granted a COA in this matter. See, e.g., Samuelson v. Roy, No. 13-cv-3025 (PAM/LIB), 2014 WL 2480171 (D. Minn. May 28, 2014).

### III. CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. This action be summarily **DISMISSED without prejudice**, unless, before the deadline for filing objections to this Report and Recommendation, Petitioner files an amended habeas corpus petition listing only fully exhausted claims; and
2. Petitioner should **NOT** be granted a Certificate of Appealability.

Dated: June 7, 2019                                             s/Leo I. Brisbois_____
                                                                Leo I. Brisbois
                                                                U.S. MAGISTRATE JUDGE

**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).